# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| HENRY ZOCH II, Individually and on behalf of The Estate of Henry Zoch III, Deceased<br><br>v.<br><br>DAIMLER, A.G., et al. | § <br> § <br> § Civil Action No. 4:17-CV-578 <br> § Judge Mazzant <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Henry Zoch II's Expedited First Motion to Compel (Dkt. #171) and Defendant Daimler, A.G.'s Motion to Set Hearing on Plaintiff's Expedited First Motion to Compel (Dkt. #182). After reviewing the relevant pleadings and motion, the Court finds it should grant Plaintiff's Motion and deny Defendant's Motion.

## BACKGROUND

This is a products liability case arising from the alleged failure of the driver's seat in Henry Zoch III's vehicle during a rear-end collision. As a result of the collision, Zoch III suffered a severe head injury and later died.

Subsequently, Plaintiff, individually and on behalf of Zoch III, filed suit on February 16, 2016 (Dkt. #1). On March 30, 2017, Plaintiff deposed Defendant's Rule 30(b)(6) corporate representative, Manfred Deubert. As a result, on May 10, 2017, Plaintiff sent an e-mail to Defendant requesting the disclosure of various items referenced by Mr. Deubert in his deposition or related to past documents disclosed by Defendant (Dkt. #171, Exhibit E) ("Plaintiff's First Requests for Production" or "Plaintiff's First RFP"). On August 1, 2017, in response to Plaintiff's First RFP, Defendant sent Plaintiff its Objections and Responses (Dkt. #171, Exhibit F). In

Defendant's response, it included general objections and objections based on German privacy law (Dkt. #171, Exhibit F at pp. 5–8).

As a result, on October 10, 2017, Plaintiff filed his Expedited First Motion to Compel (Dkt. #171). On October 17, 2017, the Court entered an Order (Dkt. #175) expediting briefing. Subsequently, Defendant filed its response (Dkt. #177) on October 23, 2017,[1] and Plaintiff filed his reply (Dkt. #181) on October 25, 2017.

Further, on October 30, 2017, Defendant filed a Motion to Set Hearing on Plaintiff's Expedited First Motion to Compel (Dkt. #182). On October 31, 2017, Plaintiff filed his response (Dkt. #184).

The Court addresses each motion in turn.

## ANALYSIS

**I.  Motion to Compel**

In response to Plaintiff's Motion to Compel, Defendant argues Plaintiff's requests are moot and that German privacy law prohibits disclosure of the requested information. Conversely, Plaintiff claims his motion is not moot, that Defendant waived its argument that foreign law applies, and that foreign law does not control in this case. The Court addresses each argument in turn.

### a.  Mootness

Defendant claims Plaintiff's requests are moot as a result of Defendant's "document production since the time Plaintiff filed his motion to compel" and its "soon" supplemental written responses and privilege log. Plaintiff argues its requests are not moot because Defendant's

---

[1] Pursuant to the Court's Order expediting briefing (Dkt. #175), Defendant had until October 23, 2017, at 12:00 p.m. to file a response. Defendant failed to comply with this Order when it filed its response (Dkt. #177) on October 23, 2017 at 3:12 p.m. Although the Court finds Defendant's filing untimely, the Court nevertheless entertains Defendant's arguments.

2

disclosure did not address all of Plaintiff's requests, Defendant failed to provide a privilege log, and Defendant's liberally redacted documents it produced.

Pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), a party must comply with certain requirements when it withholds discoverable information while claiming a privilege applies. FED. R. CIV. P. 26(b)(5)(A). Specifically, the withholding party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A)(i)–(ii).

Here, Defendant has yet to produce a privilege log complying with Rule 26(b)(5)(A). Instead, Defendant asserts various privileges while redacting large portions, if not entire pages, of documents. (*See* Dkt. #181, Exhibits A–C). Further, although Defendant claims its past and future disclosures meet Plaintiff's request, the Court is unpersuaded given Defendant's failure to obey the Federal Rules and its copious redaction of documents it produced. As such, the Court finds Plaintiff's Motion to Compel is not moot.

  b. **Waiver**

Plaintiff argues Defendant waived any application of foreign law because it did not comply with Federal Rule of Civil Procedure 44.1. The Court disagrees.

Rule 44.1, in pertinent part, states, "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." FED. R. CIV. P. 44.1. "This rule is intended to avoid unfair surprise, not to set any definite limit on the party's time for giving the notice of an issue of foreign law . . . ." *Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of Venez.*, 575 F.3d 491, 496–97 (5th Cir. 2009) (internal quotations omitted) (citations omitted). "When the applicability of foreign law is not obvious, notice is sufficient if it

3

allows the opposing party time to research the foreign rules." *Id.* at 497 (citing *Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 (S.D. Tex. 1996)). In determining whether notice is reasonable, the Court considers (1) "[t]he stage which the case had reached at the time of the notice," (2) "the reason proffered by the party for his failure to give earlier notice, and" (3) "the importance to the case as a whole of the issue of foreign law sought to be raised . . . ." *Id.* (citing FED. R. CIV. P. 44.1. advisory committee notes).

Here, factors (1) and (3) weigh in favor of Defendant. Defendant's notice of its intent to rely on foreign law took place at an early stage of the litigation, on October 23, 2017. *See* The Court's Scheduling Order, Dkt. #176 (setting the discovery deadline as June 1, 2018, the final pretrial conference for August 31, 2018, and trial between October 1, 2018 and October 26, 2018). Additionally, the foreign law issue, whether German privacy law precludes production of specific documents, is important to the case as a whole. Specifically, the information sought in Plaintiff's First RFP (Dkt. #171, Exhibit E) seeks documents related to the development, design, and engineering of Plaintiff's vehicle, which are essential in a products liability case. Regarding the second factor, Defendant failed to provide the Court with reasons for its failure to give earlier notice. However, despite Defendant's failure to provide the Court with such reasons, Plaintiff failed to "allege that it was prevented from responding or otherwise prejudiced by the delayed notice." *Northrop*, 575 F.3d at 497. Further, Plaintiff had the ability to fully address and respond to Defendant's arguments that foreign law applies in this case. As such, the Court finds Defendant did not waive its ability to apply foreign law. *See id.* (holding that an eighteen month delay in providing notice did not create unfair surprise or prejudice since the objecting party had time to respond such an argument); *Thyssen*, 911 F. Supp. at 266–67 (finding an objecting party who did not allege unfair surprise but instead only claimed waiver as a procedural matter was not harmed

4

by the application of foreign law despite the opposing party's late notice and suspect reasoning for such late notice).

### c. Application of Foreign Law

Defendant claims German privacy law, the German Federal Data Protection Act ("BDSG"),[2] prohibits the disclosure of information sought by Plaintiff. Conversely, Plaintiff argues the BDSG does not apply in this case, but in the event that the Court applies such law, exceptions within the BDSG apply. Furthermore, Plaintiff contends that if the BDSG applies, without exceptions, foreign law must yield to American discovery procedures. As such, the Court addresses (i) whether the BDSG applies; (ii) if the BDSG does apply, whether there are applicable exceptions; and (iii) if the BDSG applies, without exceptions, whether it must yield to American discovery procedures.

### i. Whether the BDSG Applies

Unless otherwise limited by court order, Federal of Civil Procedure 26(b)(1) defines the scope of discovery as "any non[-]privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). However, through "the use of so-called 'blocking statutes,' foreign states may 'prohibit[ ] the disclosure, copying, inspection, or removal of documents located in the territory of the enacting state in compliance with the orders of foreign authorities.'" *In re: Xarelto (Rivaroxaban) Products Liab. Litig.*, MDL No. 2592, 2016 WL 3923873, at *6 (E.D. La. July 21, 2016) (quoting Restatement (Third) of Foreign Relations Law § 442 (Am. Law Inst. 1987) (alterations in original)).

The "blocking statute" at issue in this case is the BDSG. Section 1 of the BDSG provides that "[t]he purpose of this Act is to protect the individual against his/her right to privacy being

---

[2] The direct translation of "Bundesdatenschutzgesetz" is "Federal Data Protection Act."

impaired through the handling of his/her personal data." Bundesdatenschutzgesetz [BDSG] [Civil Code], § 1(1), *translation at* https://www.gesetze-im-internet.de/englisch_bdsg/. The Act defines "personal data" as "any information concerning the personal or material circumstances of an identified or identifiable individual (the data subject)." *Id.* at § 3(1). In providing further guidance on what constitutes "personal data," The Data Protection Working Party, an independent agency tasked with advisory authority concerning EC Directive 95,[3] provides more expansive definitions and examples. Specifically, in *Opinion 4/2007,* The Data Protection Working Party stated, "the concept of personal data includes any sort of statements about a person. It covers 'objective' information, such as the presence of a certain substance in one's blood. It also includes 'subjective' information, opinion or assessments."[4] Article 29 Data Protection Working Party, *Opinion 4/2007 on the Concept of Personal Data*, at 6, 01248/07/EN/Final WP 136 (June 20, 2007). Further, personal data "includes information touching the individual's private and family life . . . [and] also information regarding whatever types of activity is undertaken by the individual . . . ." *Id.*

Here, in Plaintiff's First RFP, Plaintiff lists forty-nine different requests (Dkt. #171, Exhibit E). After reviewing the requests in conjunction with the expansive and in depth descriptions of "personal data" in *Opinion 4/2007*, the Court finds the following requests in Plaintiff's First RFP do not fall within the realm of personal data: Nos. 1, 2, 4, 8–10, 15–17, 19, 21, 24, 25, 27, 28, 30–37, 39, 41, 42, 44–47, and 49.[5] When information does not fall within the concept of "personal data," "the consequence is that the Directive does not apply." *Opinion 4/2007 on the Concept of Personal Data*, at 24. As such, the Court finds the BDSG does not apply to the

---

[3] The EC Directive 95 protects the privacy of personal data within the European Union.
[4] The *Opinion* further provided several examples of "subjective" personal data, including "Titius is a reliable borrower," "Titius is not expected to die soon,", and "Titius is a good worker and merits promotion."
[5] Because Defendant has not produced or provided the Court with a privilege log, the Court bases its decision on Plaintiff's requests and the documents the Court anticipates Defendant will produce in response to such requests.

above requests, and therefore orders Defendant to produce any and all relevant documents, in unredacted format, to Plaintiff related to such requests by 11:59 p.m. on November 10, 2017. However, as to the remaining requests in Plaintiff's First RFP, the Court finds Plaintiff seeks information falling within the definition of "personal data." Additionally, the Court finds Plaintiff's requests for Defendant's Rule 26 Disclosures of "all persons with knowledge of relevant facts along with a brief description of their areas of knowledge" falls within the meaning of "personal data." As such, the BDSG precludes disclosure of such information unless an exception applies.

### ii. Applicable Exceptions Within the BDSG

Plaintiff argues that even if the BDSG applies, the exception in Section 28(2)1–2(a) applies. Section 28(2)1–2(a) authorizes disclosure of otherwise protected data "in so far as this is necessary to safeguard justified interests of a third party or public interests . . . if there is no reason to assume that the data subject has a legitimate interest in his data being excluded from communication." *In re Vitamins Antitrust Litig.*, No. 99–197TFH, 2001 WL 1049433, at *7 (D.D.C. June 20, 2001) (quoting BDSG § 28(1)2, (2)2(a)). Stated differently, even if requested information is protected under the BDSG, "disclosure may still be warranted if plaintiffs can show (1) that the information at issue is 'necessary' to protect public interest and/or the interests of plaintiffs and (2) the data subjects have no 'legitimate interest' in preventing disclosure of the information." *Id.* at *8.

In arguing that the requested information is "necessary," Plaintiff claims the information he seeks relates "to the development, design, and engineering of the subject vehicle," which lies at the heart of his case. Defendant contends such information is unnecessary since it already provided Plaintiff with names of several individuals with relevant knowledge regarding key issues

7

in this case. The Court finds the information sought by Plaintiff is necessary to the present litigation. *See In re Vitamins Antitrust Litig.*, 217 F.R.D. 229, 232 (D.D.C. 2002) (stating defendants do not possess the authority to determine what Plaintiffs need to pursue their claims); *see also In re Advanced Interventional Sys. Sec. Litig.*, No. SACV92–723–AHS(RWRX), 1993 WL 331006, at *2 (C.D. Cal. May 17, 1993).

Although information is necessary, the Court must also consider "whether the individuals have a legitimate interest in preventing the disclosure of this information." *In re Vitamins*, 2001 WL 1049433, at *9. Here, the information Plaintiff seeks includes names, comments, part change requests, defect notifications, letters, writings, e-mails, meeting minutes, analyses, internal remarks, and performance agreements.[6]

Individuals possess a legitimate interest in the non-disclosure of personal data to residents of countries with non-equivalent personal data protection standards. *See id.*; *In re: Xarelto*, 2016 WL 3923873, at *12. Although a court may enter a protective order, courts have held that such orders are not "equivalent" to the protections provided by the BDGS. *See id.* As such, a presumption exists in favor of finding a legitimate interest prevents disclosure of the requested information. Accordingly, despite the existence of a protective order (Dkt. #137) in this case and the Court's finding that such information is necessary, Defendant has "a legitimate interest in preventing the disclosure this information." *In re Vitamins*, 2001 WL 1049433, at *9.

Because the Court finds the exception under Section 28 of the BDSG does not apply, the Court proceeds to an analysis on whether the BDSG should nevertheless yield to American discovery procedures.

---

[6] *See* Plaintiff's First RFP (Dkt. #171, Exhibit E at Nos. 3, 5–7, 11–14, 18, 20, 22, 23, 26, 29, 38, 40, 43, and 48).

### iii. Comity Analysis

In the United States Supreme Court case *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522 (1987), the Supreme Court addressed the relationship between "blocking statutes" and American discovery procedures. In its analysis, the Supreme Court adopted a balancing "comity analysis" stating that "foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts." *Id.* at 542, 544 n.28. Although the Supreme Court declined to articulate the analysis, it did reference the five-factor test used in the Restatement (Third) of the Law of Foreign Relations § 442 (Am. Law Inst. 1987) (the "Third Restatement"). *Id.* at 544 n.28. In *In re Anschuetz & Co., GmbH*, the Fifth Circuit adopted a three-factor comity analysis.[7] 838 F.2d 1362, 1364 (5th Cir. 1988). However, despite the Fifth Circuit's adoption of the three-factor comity analysis, various district courts in the Fifth Circuit routinely use the five-factor test of the Third Restatement referenced by the Supreme Court in *Société*. *See In re: Xarelto*, 2016 WL 3923873, at *14; *S.E.C. v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 330 (N.D. Tex. 2011); *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 2d 832, 834 (E.D. Tex. 2008). Here, the Court joins fellow district courts and applies the five-factor analysis in the Third Restatement.

Under the Third Restatement, the relevant factors in a comity analysis include: (1) the importance of the required discovery to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which non-compliance with the request would undermine important interests of the United States, or compliance with the request would

---

[7] "The district court is only directed to determine whether [foreign discovery procedures] are appropriate after 'scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to these procedures would prove effective.'" *In re Anschuetz*, 838 F.2d at 1364 (citing *Société Nationale*, 482 U.S. at 544–45).

9

undermine important interests of the state where the information is located. *Seoul*, 590 F. Supp. 2d at 834 (citing *Société*, 482 U.S. at 544 n.28).

### 1. The Importance of the Requested Discovery to the Litigation

Although the Fifth Circuit did not provide guidance on the degree of "importance" necessary under this factor, another court within this district provided language suggesting the standard is "critical or compelling." *Seoul*, F. Supp. 2d at 835. As such, the Court determines the "importance" of Plaintiff's requested discovery on whether such information is "critical or compelling."

Defendant argues Plaintiff's requested information is unimportant because Plaintiff failed to justify its need for such information and Defendant provided a corporate witness with knowledge of relevant information. Conversely, Plaintiff claims the information sought is relevant "to the development, design, and engineering of the subject vehicle," which goes to the heart of his case. Further, Plaintiff avers that if Defendant "had its way, [Defendant] will get to hand-select the persons Plaintiff gets to depose by only disclosing certain people."

Here, Plaintiff's remaining requests seek names, comments, part change requests, defect notifications, letters, writings, e-mails, meeting minutes, analyses, internal remarks, and performance agreements.[8] The Court finds such information is "critical or compelling" in providing Plaintiff an opportunity to prove his case at trial. *See Hernandez v. Tokal Corp.*, 2 S.W.3d 251, 258 (Tex. 1999); Tex. Civ. Prac. & Rem. Code § 82.005(b)(1)–(2). As such, the Court finds this factor favors Plaintiff.

---

[8] *See* Plaintiff's First RFP (Dkt. #171, Exhibit E at Nos. 3, 5–7, 11–14, 18, 20, 22, 23, 26, 29, 38, 40, 43, and 48).

## 2. Degree of Specificity of the Requests

The Court finds Plaintiff submitted highly specific requests. *See* Plaintiff's First RFP (Dkt. #171, Exhibit E). Further, Defendant concedes Plaintiff submitted "specifically targeted requests." As such, this factor favors Plaintiff.

## 3. Where Information Originated

The Court finds, and Plaintiff concedes, that the information Plaintiff seeks originated outside of the United States. Accordingly, this factor favors Defendant.

## 4. Availability of Alternative Means of Securing Information

Plaintiff argues it "has no other means of obtaining information that [Defendant] has redacted throughout its documents or to identify persons involved." Defendant claims such information is available in the substance of materials already produced and in the testimony of company witnesses already identified. The Court finds Defendant's argument sophistic. On one hand, Defendant contends the requested information is protected by the BDSG; however, on the other hand, Defendant avers such information is available via alternative means, i.e., past disclosures and their corporate witnesses.

Further, the basis of Plaintiff's Motion to Compel seeks information stemming from Defendant's corporate witness's deposition and redacted materials Defendant already produced. As such, while Defendant claims alternative means exist, Plaintiff attempted to proceed via those routes and was met with resistance by Defendant. As a result, the Court finds no alternative means exists, thus making this factor favor Plaintiff.

## 5. Balancing of National Interests

Plaintiff argues the United States has a substantial interest in fully and fairly adjudicating matters before its courts, and that such interest is embodied within the rules of civil procedure. As

such, Plaintiff claims non-compliance with its requests undermines important interests of the United States. Conversely, Defendant contends "Germany has expressed its important interest in protecting the personal data and privacy of individuals through the BDSG provisions, its constitutional fundamental right to informational self-determination, and numerous other expressions of German interest in protecting the privacy of personal information." Thus, Defendant argues compliance with Plaintiff's requests undermines important German interests.

American courts must be cognizant that "many foreign countries, particularly civil law countries, do not subscribe to our open-ended views regarding pretrial discovery, and in some cases may even be offended by our pretrial procedures." *In re Anschuetz*, 838 F.2d at 1364. Given Germany's expressed interest in protecting personal data through the BDSG, its constitution, its filing of an *amicus* brief in *In re Vitamins*, and various other expressions, the Court finds "Germany has a weighty national interest in protecting the personal data of German citizens." *In re: Xarelto*, 2016 WL 3923873, at *17. However, despite Germany's interest in protecting such personal data, the quantity and context of the personal data at issue in this case mitigates these concerns. Here, Plaintiff's requests seek part change requests, defect notifications, meeting minutes, performance agreements, e-mails and writings regarding comments and remarks concerning the seat in question, and names of persons with knowledge of relevant facts. The Court finds it imposed meaningful protective measures to ensure the confidentiality of such produced data. *See* Protective Order, Dkt. #137. Further, once such evidence is produced, "evidentiary hurdles such as Rules 401 and 403 of the Federal Rules of Evidence will prevent the admissibility of irrelevant or unduly prejudicial information at trial." *In re: Xarelto*, 2016 WL 3923873, at *17. Given these conditions, the Court finds Germany's interests in non-production are inherently curtailed.

Concerning the United States's interests, the Court finds it has a substantial interest in "vindicating the rights of American plaintiffs" and "adjudicating matters before its courts." *In re: Xarelto*, 2016 WL 392383, at *18 (quoting *Pershing Pac. W., LLC v. MarineMax Inc.*, No. 10-cv-1345-L (DHB), 2013 WL 941617, at *8 (S.D. Cal. Mar. 11, 2013)); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523–24 (S.D.N.Y. 1987).

After balancing the national interests of both Germany and the United States, the Court finds Germany's mitigated interests do not override the United States's interests in obtaining discovery of evidence relevant to Plaintiff's case. As such, the Court finds this factor favors Plaintiff.

Seeing that four factors favor Plaintiff and one factor favors Defendant, the Court finds the balance leans towards the production of evidence related to Plaintiff's requests. As such, Defendant is ordered to produce any and all relevant documents, in unredacted format, to Plaintiff related to all requests in Plaintiff's First RFP and disclose persons with knowledge of relevant facts along with a brief description of their areas of knowledge pursuant to Rule 26 by 11:59 p.m. on November 10, 2017.

## II. Motion to Set Hearing

Because of the Court's aforementioned analysis addressing Plaintiff's Motion to Compel, the Court finds it unnecessary to host a hearing regarding said motion.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Expedited First Motion to Compel (Dkt. #171) is hereby **GRANTED**.

If is further **ORDERED** that Defendant's Motion to Set Hearing on Plaintiff's Expedited First Motion to Compel (Dkt. #182) is hereby **DENIED**.

Accordingly, the Court overrules Defendant's objections related to Plaintiff's First Request for Production (Dkt. #171, Exhibit E) and orders Defendant to produce any and all relevant documents, in unredacted format, related to such requests, along with the names of its employees with knowledge of relevant facts with a brief description of their areas of knowledge by 11:59 p.m. on November 10, 2017.

**SIGNED this 8th day of November, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE