# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| HENRY ZOCH II, Individually and on behalf of The Estate of Henry Zoch III, Deceased<br><br>v.<br><br>DAIMLER, A.G., et al. | § § § § § § § Civil Action No. 4:17-CV-578<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Henry Zoch II's Expedited Second Motion to Compel (Dkt. #192). After reviewing the relevant pleadings and motion, the Court finds the motion should be granted in part.

### BACKGROUND

This is a products liability case arising from the alleged failure of the driver's seat in Henry Zoch III's ("Zoch III") vehicle during a rear-end collision. As a result of the collision, Zoch III suffered a severe head injury and later died. Subsequently, Plaintiff, individually and on behalf of Zoch III, filed suit on February 16, 2016 (Dkt. #1).

On October 10, 2017, Plaintiff filed his Expedited First Motion to Compel (Dkt. #171). In granting Plaintiff's Motion, the Court ordered Defendant Daimler AG ("Daimler") to "produce any and all relevant documents, in unredacted format, to Plaintiff related to all requests in Plaintiff's First [Requests for Production] and [to] disclose all persons with knowledge or relevant facts along with a brief description of their areas of knowledge." (Dkt. #186 at p. 13).

On March 2, 2018, Plaintiff filed his Expedited Second Motion to Compel (Dkt. #192). Specifically, Plaintiff seeks the Court to compel Defendants Daimler, Mercedes Benz USA, LLC and PAG Distributor S1, LLC (collectively "Defendants") to comply with the Court's previous

ruling and to overrule Defendants' objections as to Plaintiff's Second Request for Production ("Second RFP"). On March 5, 2018, the Court ordered expedited briefing on Plaintiff's Motion (Dkt. #194). On March 9, 2018, Defendants filed their response (Dkt. #196).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #176 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party

establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." Fed. R. Civ. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the Court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming

undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

In his Second Motion to Compel (Dkt. #192), Plaintiff seeks the Court to compel Defendants to produce four separate categories of documents. The Court addresses each in turn.

### I. Finite Element Method Model Materials

Finite Element Method ("FEM") models are a type of "[c]omputer-based testing [that] allows engineers to examine a seat's performance in a simulated crash without the need for any actual vehicle body structure." (Dkt. #192 at p. 3). "Because the FEM model accurately reflects the physical characteristics of a seat, computer programs use the FEM to examine how minor design changes impact the performance of a seat." (Dkt. #192 at p. 4).

In Plaintiff's First Request for Production ("First RFP'), Plaintiff requested "an electronic copy of the FEM model for the 2008 model year Smart Fortwo driver's seat." (Dkt. #192, Exhibit 8 at p. 4). The Court, in its Order granting Plaintiff's Expedited First Motion to Compel, addressed Plaintiff's request and ordered Daimler to "produce any and all relevant documents . . . related to all requests in Plaintiff's First RFP." (Dkt. #186 at p. 13). Plaintiff avers that despite the Court's Order, "Daimler disobeyed [the] Order and failed to produce the FEM or any computer modeling." (Dkt. #192 at p. 5). As such, Plaintiff request the Court to compel Daimler to produce such computer-based modeling within five business days of entering an order. Additionally, Plaintiff seeks the ability to serve a supplemental expert report addressing such FEM-related opinions twelve working days after receiving such materials.

Daimler responds that "it does not have the requested FEM files in its possession" but "has produced all materials in its possession, custody, and control that referenced or contained

4

embedded FEM modeling used in the development of the 2008 smart fortwo driver's seat." (Dkt. #196 at p. 5). Further, Daimler explained that the "FEM analysis of the subject vehicle was outsourced to independent suppliers including Altair Engineering GmbH ('Altair')." (Dkt. #196 at p. 6). Despite this outsourcing, on December 15, 2017, Daimler contacted Altair requesting production of such FEM files. In February of 2018, Altair confirmed that "[it] had performed FEM analysis [on the subject vehicle] but that [it] was uncertain whether that analysis included creation of an FEM model of the driver's seat or any simulation of the seat performance." (Dkt. #196 at p. 6). Based on such information, Daimler scheduled a visit to Altair on March 12, 2018, for the purpose of searching for the requested FEM files. As such, Daimler avers that it complied with the Court's Order and is currently participating in continued efforts to obtain such requested information.

In accordance with the Court's ruling on Plaintiff's First Motion to Compel (Dkt. #186), the Court orders Daimler, to the extent it has not already done so, to produce any and all relevant documents, that it has in its possession, custody, or control, related to an FEM model for the 2008 model year Smart Fortwo driver's seat. Further, such documents must be produced by 11:59 p.m. on March 20, 2018. Additionally, the Court orders Daimler to produce, within one month of this Order, any FEM files responsive to Plaintiff's request that are discovered as a result of its search of Altair's files. Finally, Plaintiff may serve a supplemental expert report addressing Daimler's production of relevant FEM files within twelve working days of receiving such files.

## II. Rear Crash Testing Involving 95th Percentile Crash Dummy

In determining how well an automotive seat protects an occupant in a rear impact, manufacturers conduct tests at various speeds using crash test dummies. One variation of a test

5

dummy includes the 95th percentile dummy, which represents someone approximately 223 lbs. and 6'2".

In his First RFP, Plaintiff requested all testing related to the use of the 95th percentile dummy. *See* (Dkt. 192, Exhibit 8 at pp. 3, 5). The Court, in its Order granting Plaintiff's Expedited First Motion to Compel, addressed Plaintiff's request and ordered Daimler to "produce any and all relevant documents . . . related to all requests in Plaintiff's First RFP." (Dkt. #186 at p. 13). Plaintiff avers that despite the Court's Order, "Daimler has not yet produced the full vehicle tests it conducted examining performance of the seats in a rear-impact in which the 95th percentile dummy was used." (Dkt. #192 at p. 7). As such, Plaintiff requests the Court to compel Daimler to produce "all rear-impact testing involving the subject vehicle and seats in which a 95th percentile crash test dummy was used" within five business days entering an order (Dkt. #192 at p. 7). Additionally, Plaintiff seeks the ability to serve a supplemental expert report addressing such opinions twelve working days after receiving such materials.

Daimler contends that it "produced all crash and sled testing (with the exception of low speed repair crash testing) it was able to locate after a thorough and reasonable search, including those [that] involved [the] 95th percentile crash dummies." (Dkt. #196 at p. 7). Further, Daimler contends that since *smart GmbH*, "a separate company that ceased to exist and was merged into Daimler," primarily designed and developed the subject vehicle, Daimler "has been unable to locate any such testing in its files" of any "additional rear-impact testing . . . performed by outside suppliers during the design and development stage." (Dkt. #196 at p. 8). As such, Daimler request the Court deny Plaintiff's motion.

In accordance with the Court's ruling on Plaintiff's First Motion to Compel (Dkt. #186), the Court orders Daimler, to the extent it has not already done so, to produce any and all relevant

documents, that it has in its possession, custody, or control, related to rear-impact testing involving the subject vehicle and seats in which a 95th percentile crash test dummy was used by 11:59 p.m. on March 20, 2018. Further, Plaintiff may serve a supplemental expert report addressing Daimler's production of relevant documents within twelve working days of receiving such documents.

**III.     Subsequent Generation Materials Concerning the Smart Seat**

Zoch III drove a Smart Fortwo 451 at the time of his collision, which was sold between 2007 and 2014. A subsequent version of the Smart Fortwo—C453—was sold from 2014 to the present. In his Second RFP, Plaintiff, in pertinent part, sought design drawings, crash tests, and other material concerning the C453. All three Defendants objected to Plaintiff's Second RFP. *See* (Dkt. #192, Exhibits 16–18). Plaintiff alleges such information is relevant and necessary to his claim because in products liability cases, a plaintiff "must show a safer alternative design existed that was both technologically and economically feasible." (Dkt. #192 at p. 9). As such, Plaintiff claims that "[t]he design and performance of the new Smart Fortwo [C453] seat is relevant to the existence of a safer alternative design," and "the technology used in the new seat was equally available from 2007 to 2014." (Dkt. #192 at p. 9).

Defendants respond that Plaintiff's "requests [are] outside the proper scope of discovery because the information sought is not relevant or [is] of such minimal relevance that the burden on Daimler to search for, locate, and produce such information would be disproportional to the needs of the case." (Dkt. #196 at p. 8). Specifically, Defendants contend that "Plaintiff's demands for information regarding a subsequent generation smart fortwo fall outside the permissible scope of discovery because the C453 smart fortwo is not sufficiently similar to the subject 2008 smart fortwo, particularly with respect to the its driver's seat." (Dkt. #196 at p. 9).

To recover on a products liability claim alleging design defect, a plaintiff must prove that: "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Thompson v. Toyota Motor Sales, USA, Inc.*, No. SA 16 CA 00645 DAE, 2017 WL 5194108, at *2 (W.D. Tex. May 30, 2017) (citing *Genie Indus., Inc. v. Matak*, 462 S.W. 3d 1, 6 (Tex. 2015)). A safer alternative design is "one that would have prevented or significantly reduced the risk of the injury, would not substantially impair the product's utility, and was economically and technologically feasible at the time." *Id.* (citing *Genie*, 462 S.W. 3d at 6). Such design "need not be actually built and tested; a plaintiff must show only that the alternative design was 'capable of being developed.'" *Id.* (quoting *Genie*, 462 S.W.3d at 6).

Plaintiff argues that materials and tests concerning the C453 are relevant and discoverable because such information assist him in satisfying his burden of proving the existence of a safer alternative design. Specifically, Plaintiff alleges that while the 451 contained a "single recliner" mechanism, the driver's seat in the C453 "utilizes a dual-sided recliner mechanism," which "can result in much improved strength during a rear collision." (Dkt. #192 at p. 8). Despite this statement, Plaintiff fails to elaborate on exactly how a dual-sided recliner provides additional strength or how it helps Plaintiff satisfy his burden of demonstrating the existence of a safer alternative design. *See Thompson*, 2017 WL 5194108, at *2–*5.

In *Thompson*, Thompson filed a products liability suit contesting the crashworthiness of a Third Generation 2002 Toyota 4Runner. *Id.* at *1. In his interrogatories and requests for production, Thompson sought, in pertinent part, information concerning the Fourth Generation 4Runner. *Id.* at *2. Justifying his request, Thompson explained that the Fourth Generation design

assisted him in meeting his burden of establishing the existence of a safer alternative design. *Id.* Specifically, Thompson described the design changes to include thicker windshield headers that were reinforced with a double plate and thicker A pillars, which included internal reinforcements continuing from the base to the top. *Id.* Thompson argued that "Defendants implemented these and other design changes to strengthen the roof, making it more likely to maintain adequate survival space in a rollover." *Id.* The court held that "[t]o the extent the design placed in the 4th Generation 4Runner constituted a 'safer alternative design,' and was economically and technologically feasible prior to 2003, its discovery is relevant." *Id.* at *4.

Here, Plaintiff provides the Court with limited and conclusory statements in an attempt to justify his request for information related to the C453. Specifically, Plaintiff states (1) "the new seat recliner mechanism can result in much improved strength during a rear collision;" (2) "[t]he technology used in the new seat was equally available from 2007 to 2014;" and (3) "[t]he performance specifications and the design performance of the new Smart Fortwo 453 seats are critical to Plaintiff's claims concerning a safer alternative design." (Dkt. #192 at pp. 8–9). The Court finds that such statements are insufficient to warrant overruling Defendants' objections to Plaintiff's request at this time. *See Thompson*, 2017 WL 5194108, at *2–*5.

### IV. United States Marketing Campaign Materials

Plaintiff claims that "Defendants continuously marketed the Smart Fortwo in the United States by representing that it would provide superior protection for its occupants." (Dkt. #192 at p. 10). Plaintiff contends that such information "is directly relevant to this Plaintiff's claims of crashworthiness and negligence." (Dkt. #192 at p. 11). As such, Plaintiff, in his Second RFP, sought all marking materials and related communications concerning the subject vehicle. *See* (Dkt. #192. Exhibits 16–18). Because Defendants objected to Plaintiff's requests and only

9

produced "basic advertising" documents, Plaintiff seeks the Court to overrule such objections and order complete responses.

Defendants aver that such "[m]arketing materials are entirely irrelevant in this case," because "Plaintiff Henry Zoch II admitted that decedent, Henry Zoch III, did not rely on specific marketing materials in deciding to purchase the subject 2008 smart fortwo." (Dkt. #196 at p. 14). Despite their relevancy argument, Defendants claim they "have already produced all materials in their collective possession, custody and control regarding advertisements, commercials, presentations distributed to the media or public and press releases utilized in the United States market pertaining to the Plaintiff's 451 Vehicle." (Dkt. #196 at p. 14).

Because Defendants claim they produced all marketing and advertising materials in their possession, custody, and control, there is nothing more for the Court to compel production of. As such, the Court denies Plaintiff's request.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Expedited Second Motion to Compel (Dkt. #192) is hereby **GRANTED in part.**

Accordingly, Daimler is **ORDERED**, to the extent it has not already done so, to produce any and all relevant documents, that it has in its possession, custody, or control, related to (1) an FEM model for the 2008 model year Smart Fortwo driver's seat, and (2) rear-impact testing involving the subject vehicle and seats in which a 95th percentile crash test dummy was used. Further, such documents must be produced by 11:59 p.m. on March 20, 2018.

It is further **ORDERED** that Daimler produce, within one month of this Order, any FEM files responsive to Plaintiff's request that are discovered as a result of its search of Altair's files.

It is further **ORDERED** that Plaintiff may serve a supplemental expert report addressing Daimler's production within twelve working days of receiving such documents.

**SIGNED this 13th day of March, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE