UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| HENRY ZOCH II, Individually and on behalf of THE ESTATE OF HENRY ZOCH III, Deceased, § § § § Plaintiff § § CIVIL ACTION NO.4:17-cv-578 v. § § Judge Mazzant DAIMLER, A.G., a foreign corporation § organized under the laws of Germany; et al. § § Defendants. § § | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S MARKETING DEFECT, MANUFACTURING DEFECT, POST-SALE DUTIES, AND GROSS NEGLIGENCE CLAIMS

Defendants, Daimler A.G. ("Daimler"), Mercedes-Benz USA, LLC ("MBUSA"), and PAG Distributor S1, LLC f/k/a smart USA Distributor, LLC ("PAG Distributor") (collectively, "Defendants"), hereby move for summary judgment on Plaintiff's marketing defect, manufacturing defect, post-sale duties, and gross negligence claims. In support of their Motion, Defendants respectfully submit the following:

## I. INTRODUCTION

Plaintiff Henry Zoch II filed this product liability action, alleging that the vehicle his son was driving was defectively designed, manufactured, and marketed, leading to his son's death in a car accident. Mr. Zoch has sued Daimler, MUBSA, and PAG Distributor based on strict product liability, negligence, and gross negligence.[1] These claims, however, are not supported by sufficient

---

[1] MBUSA has contemporaneously filed its own Supplement to its Motion for Summary Judgment based on its complete lack of involvement with the subject vehicle, but to the extent this Court denies that motion, additional grounds are presented herein for summary judgment on the claims against MBUSA. Moreover, Defendants have also filed a Motion for Judgment on the Pleadings. Depending on the Court's decision on that motion, the relief requested in this Motion for Summary Judgment may become moot.

evidence, as explained in the foregoing sections. Thus, Defendants request that this Court enter summary judgment in their favor.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Defendants are entitled to summary judgment on Plaintiff's marketing defect claim (whether based on negligence or strict liability).

2. Whether Defendants are entitled to summary judgment on Plaintiff's manufacturing defect claim (whether based on negligence or strict liability).

3. Whether Defendants are entitled to summary judgment on any claim arising from a post-sale duty.

4. Whether Defendants are entitled to summary judgment on Plaintiff's gross negligence claim.

## III. SUMMARY JUDGMENT EVIDENCE

Defendants attach true and correct copies of the following exhibits as evidence in support of their Motion for Summary Judgment:

**Exhibit A**     Plaintiff's Amended Expert Disclosures

**Exhibit B**     Subject Vehicle's Title History

## IV. STATEMENT OF UNDISPUTED MATERIAL FACTS

On or about October 15, 2014, Plaintiff's decedent, Henry Zoch III ("Decedent"), was driving a 2008 smart fortwo ("subject vehicle") in Plano, Texas, when another vehicle rear-ended the subject vehicle, pushing it forward into the vehicle in front of the subject vehicle. Decedent was pronounced dead following the crash. Plaintiff's father, Henry Zoch II ("Plaintiff"), brought this product liability action, individually and on behalf of Decedent's estate, against Daimler, PAG Distributor, MBUSA, and others.

## V. STANDARDS FOR SUMMARY JUDGMENT

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[2] Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions.[3]

A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim.[4] As to the latter approach, the defendant's burden is only to point out the absence of evidence supporting the nonmoving party's case; it "need not negate the elements of the nonmovant's case."[5]

Once the defendant makes a properly supported motion for summary judgment, the plaintiff must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.[6] Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden.[7] Although the Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, courts do not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.[8]

---

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[3] *Martin v. Am. Indus. Int'l*, No. CIV.A. 6:06CV513, 2007 WL 4369717, at *2 (E.D. Tex. Dec. 13, 2007).
[4] *See Celotex*, 477 U.S. at 322-23.
[5] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).
[6] *Martin*, 2007 WL 4369717, at *1.
[7] *Id.*
[8] *Id.* at *2.

## VI. ARGUMENT & AUTHORITIES

**A. Defendants are entitled to summary judgment on Plaintiff's negligent and strict liability marketing defect claim.**

Plaintiff's Third Amended Complaint and subsequent filings reveal a complete misunderstanding of a "marketing defect" claim under Texas law. Contrary to implications in Plaintiff's pleadings, marketing defect claims do not arise from alleged misrepresentations in advertisements or marketing materials. Rather, marketing defect claims stem from a manufacturer's alleged failure to provide a warning or instruction about the use of a product that, without that warning or instruction, renders the product unreasonably dangerous.

This distinction is best demonstrated through a law-school-type hypothetical. A manufacturer places into the stream of commerce a child car seat that is, in its design and manufacture, safe for a consumer's use. The manufacturer, however, does not provide any instructions as to the proper installation of the child car seat in a vehicle. A consumer buys the child car seat and unbeknownst to that consumer, installs it improperly in his or her vehicle. When the vehicle is involved in a crash and the child car seat occupant is injured because of the improper installation, that consumer may have a marketing defect claim against the manufacturer for failing to tell the consumer how to install the child car seat. That lawsuit will have nothing to do with the manufacturer's advertisement of the child car seat as safe; it will focus on whether the consumer was adequately informed of the *proper use* of the child car seat.

This case is not like that hypothetical. Plaintiff here seems to allege[9] that Defendants should have provided warnings about the subject vehicle's alleged stiff structure or the claimed propensity of the driver's seat to yield during a rear-impact crash. Neither topic addresses an *improper use* of

---

[9] Plaintiff's marketing defect claim is insufficiently pled, leaving Defendants to ponder the basis of his claim. Defendants have, as a result, moved for judgment on the pleadings.

the subject vehicle and its driver's seat or informs consumers as to *how* the subject vehicle and its driver's seat should be used. Any warnings about these two topics would simply amount to a warning to "not buy the product at all." [10] But "any suggestion that the plaintiff might not have purchased the car were a proper warning issued was nothing other than 'pure conjecture or guess.'"[11] No other behavioral changes would be called for through warnings on such topics. Thus, marketing defect claims cannot be predicated on such warnings.[12]

Because Plaintiff has not brought a proper marketing defect claim against Defendants, he cannot establish any of the essential elements of this (improper) claim. To prevail on a marketing defect (or failure to warn) claim, a plaintiff must establish the following:

(1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist;

(2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed;

(3) the product must possess a marketing defect;

(4) the absence of the warning and/or instructions *must render the product unreasonably dangerous* to the ultimate user or consumer of the product; and

(5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.[13]

For his strict liability claim, Plaintiff must establish producing cause as the cause-in-fact of the harm.[14] Producing cause means that a "defendant's conduct must have been a substantial factor in bringing about the injury and that the injury would not have occurred *but for* the defendant's conduct."[15] "Proof of causation requires more than conjecture or guess."[16]

---

[10] *Hernandez v. Ford Motor Co.,* No. C.A.NO.C-04-319, 2005 WL 1693945, at *2 (S.D. Tex. July 20, 2005).
[11] *Id.* (quoting *Greiner v. Volkswagenwerk Aktiengesellschaft*, 429 F.Supp. 495 (E.D. Pa. 1997)).
[12] *Id.* (citing *Lujan v. Tampo Manufacturing Co., Inc.*, 825 S.W.2d 505, 510 (Tex. 1992)).
[13] *See Gen. Motors Corp. v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).
[14] *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 238 (5th Cir. 2003).
[15] *Id.*
[16] *Id.*

Plaintiffs must prove the same elements for a negligence claim based on an alleged marketing defect, except that the causation standard is proximate cause.[17] Proximate cause means a cause that was a substantial factor in bringing about an event, without which such event would not have occurred.[18] In negligence actions, the element of foreseeability is added to the definition of proximate cause. Thus, in order to form a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.[19]

Plaintiff does not have evidence of the essential elements of his marketing defect claim. As discussed above, Plaintiff has not proposed the content or placement of any warning or instruction that he believes Defendants should have provided at the time of sale regarding the proper or improper use of the subject vehicle and its driver's seat that would have made a difference in the outcome of this case. Plaintiff has not adduced evidence that the subject vehicle *was adequate* in design or manufacture but *was rendered* unreasonably dangerous due to the absence of the (still undisclosed) warning or instruction—Plaintiff has only attempted in this case to demonstrate that the subject vehicle's design *was defective*. Finally, Plaintiff does not have evidence to establish foreseeability or that each Defendant knew, at the time of sale, of an alleged risk of harm inherent in the product.

Many of the foregoing elements must be proved by expert testimony because well-established Texas law generally requires expert testimony to support automotive product liability claims, including strict liability and negligent marketing defect claims.[20] As one court stated, "the

---

[17] *See Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied); *Garrick v. Autoliv ASP, Inc.*, No. 14-17-00818-CV, 2018 WL 3385159, at *6 (Tex. App.—Houston [14th Dist.] July 12, 2018, no pet. h.).
[18] *Rudes v. Gottschalk*, 324 S.W.2d 201, 203-04 (Tex. 1959).
[19] *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 221 n.7 (Tex. 2010).
[20] *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007) ("expert testimony is generally encouraged if not required to establish a products liability claim"); *Gomez v. Ford Motor Co.*, No. 5:15-CV-866-DAE, 2018 WL 3603119, at *3 (W.D. Tex. Feb. 5, 2018) ("Without expert testimony, Plaintiffs cannot establish a prima facie case,

fact that an injury occurred, standing alone, does not establish that a product was defective or that it caused the injury. Expert testimony is generally necessary to show that a product was defectively designed, manufactured, or marketed, and that the defect was causally related to an injury."[21]

Plaintiff's case falls within the general rule. The subject matter of automobile warnings and instructions is not within the scope of knowledge of the average person.[22] This is especially true where, as here, the alleged marketing defect concerns the "complex and sophisticated design of a modern automobile," including its structure and "crumple zones" and the interworking and functioning of a driver's seat during a specific type of crash sequence.[23] From what Defendants can decipher from his Third Amended Complaint, Plaintiff contends that Defendants should have "warned Americans that the Smart Fortwo lacked any rear impact crumple zone, the extremely rigid cabin structure resulted in a tested (sic), and that there was a proven propensity of the seats to collapse and produce fatal injuries in rear crashes as low as 30 miles-per-hour."[24] The alleged risks about which these topics intend to inform consumers are simply not within a lay person's experience and expert testimony is necessary to explain how the lack of alleged warnings or instructions rendered the vehicle unreasonably dangerous. Even if these topics were within a layperson's experience, an expert is needed to testify, among other matters, as to the content of a warning that would adequately convey that risk and the placement of that warning or instruction

---

under negligence or strict liability, for [marketing] defect at trial."); *Castillo v. Hongjin Crown Corp.*, No. DR08CV00031AMLVRG, 2010 WL 11506614, at *5 (W.D. Tex. Mar. 4, 2010), *report and recommendation adopted*, No. DR08CV0031AMLVRG, 2010 WL 11506607 (W.D. Tex. May 19, 2010); *Samuell v. Toyota Motor Corp.*, No. MO-13-CV-47, 2015 WL 1925902, at *4 (W.D. Tex. Apr. 27, 2015); *cf. Booker v. John Bean Techs. Corp.*, No. CIV.A. H-10-3512, 2011 WL 6250714, at *2 (S.D. Tex. Dec. 13, 2011).
[21] *Sigurdson v. Ford Motor Co.*, No. CIV.A.H-04-03429, 2006 WL 417502, at *2 (S.D. Tex. Feb. 21, 2006).
[22] *Cf. Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 118 (Tex. App.—San Antonio 2004, no pet.) ("A jury could not have determined, without the benefit of expert testimony, which, among many, warnings and instructions should be printed on a sidewall.").
[23] *Samuell*, 2015 WL 1925902, at *5.
[24] Pl.'s 3rd Am. Compl., Dkt. # 207, ¶ 25.

such that it would catch a consumer's attention.[25] Expert testimony is also necessary because "there are many factors that could have contributed to the cause of Plaintiff's injury from the car crash in this case," which is an issue "require[ing] knowledge beyond the general experience and common understanding of laypersons."[26]

Plaintiff has not designated a warnings expert.[27] No expert otherwise designated by Plaintiff is qualified to give an opinion on automotive instructions or warnings. Because Plaintiff lacks the requisite expert testimony to prove his marketing defect claim, he cannot establish a genuine issue of fact on his marketing defect claim, mandating dismissal of this claim. Moreover, because Plaintiff lacks other evidence on essential elements of his marketing defect claims, summary judgment should be granted on this claim.

**B.  Defendants are entitled to summary judgment on Plaintiff's negligent and strict liability manufacturing defect claim.**

Under Texas law, a manufacturing defect exists when a single product deviates, in its construction or quality, from the specifications or planned output in a manner that renders the product unreasonably dangerous.[28] In other words, Plaintiff must prove that the subject vehicle "performed differently from other [vehicles] in the same product line."[29] Plaintiff bears the burden of proving not only that a deviation occurred but also that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of Plaintiff's injuries.[30] The elements are the same for a negligent manufacturing claim, except that the causation standard is proximate cause.

---

[25] *Rios*, 143 S.W.3d at 118 ("Our conclusion [that expert testimony is needed] is supported by the fact that Mr. Rios *did not offer a proposed warning* . . . ." (emphasis added)).
[26] *Id.*
[27] Pl.'s Am. Expert Discls., attached as Exhibit A.
[28] *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014).
[29] *Id.* at 329.
[30] *Id.*

The requirement of a deviation from the manufacturer's specifications or planned output serves the essential purpose of distinguishing a manufacturing defect from a design defect.[31] As one court explained, "Manufacturing defect cases involve products which are flawed, *i.e.*, which do not conform to the manufacturer's own specifications, and are not identical to their mass-produced siblings."[32] In contrast, a design defect claim alleges that the defect is found in all of the products manufactured based on the same specifications.[33]

To prove a manufacturing defect under Texas law then, a specific defect must be *identified* by competent evidence and other possible causes must be ruled out.[34] Requiring identification of a specific deviation permits a jury to determine whether a specific defect caused the accident, rather than premising liability on a belief that a product failure, standing alone, is enough to find a product defect.[35] Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect.[36] Otherwise, the jury is invited to find liability based on speculation as to the cause of the incident in issue.[37]

Furthermore, as the Texas Supreme Court has noted, "requiring proof of a deviation from manufacturer specifications or planned output also comports with [the court's] recognition that expert testimony is generally encouraged if not required to establish a products liability claim. If juries were generally free to infer a product defect and injury causation from an accident or product failure alone, without any proof of the specific deviation from design that caused the accident,

---

[31] *Ledesma*, 242 S.W.3d at 42.
[32] *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 268 (5th Cir. 2001) (quoting *Ford Motor Co. v. Pool*, 688 S.W.2d 879, 881 (Tex. App.—Texarkana 1985), *rev'd in part on other grounds*, 715 S.W.2d 629 (Tex. 1986)).
[33] *See id.*
[34] *Casey*, 770 F.3d at 326 (citing *Ledesma*, 242 S.W.3d at 42).
[35] *Id.*
[36] *Id.*
[37] *Id.*

expert testimony would hardly seem essential. Yet the Texas Supreme Court [has] repeatedly said otherwise."[38]

Defendants are entitled to summary judgment on Plaintiff's manufacturing defect claim as Plaintiff has failed to adduce evidence on each essential element of this claim. First, consistent with Texas case law, expert testimony is necessary in this complicated, highly technical products liability cases. One need only to glance at Plaintiff's own expert disclosures to determine that whether, for example, the driver's seat contained a defect and whether that defect caused the accident involves complex questions of biomechanics, metallurgy, mechanical engineering, physics, chemistry, and forensic, anatomical, and clinical pathology, all of which are beyond the general understanding and common knowledge of laypersons.[39] Although Plaintiff has designated experts to opine on issues related to design defects, Plaintiff has no expert testimony regarding an alleged manufacturing defect.

Additionally, Plaintiff has no evidence—expert or otherwise—that there was a deviation in the specifications or planned output affecting the subject vehicle's structure, driver's seat, or any other component of the subject vehicle. Identification of a specific deviation is an "indispensable element" of his claim, which must be established with expert testimony.[40] Instead of providing evidence of a deviation, Plaintiff has focused his efforts on demonstrating that the *design* of the subject vehicle was defective. In a case like this one, where the plaintiff failed to present any direct evidence of a deviation during the manufacture of the vehicle at issue and failed to show that the specific component at issue performed differently from other components in the

---

[38] *Ledesma*, 242 S.W.3d at 42.
[39] Ex. A (Pl.'s Am. Expert Discls.); *see also Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 810 (S.D. Tex. 2011) (requiring expert testimony in a product liability action because "whether the tire contained a defect and whether that defect caused the accident involves complex questions of chemistry, engineering and physics beyond the general understanding and common knowledge of laypersons").
[40] *Garrick*, , 2018 WL 3385159, at *4 (quoting *Ledesma*, 242 S.W.3d at 42).

same product line, the Fifth Circuit held that plaintiff did not show that a reasonable jury could find a manufacturing defect.[41] Plaintiff here has likewise failed to produce evidence sufficient to carry his burden and defeat summary judgment on his manufacturing defect claim.

C. **Defendants are entitled to summary judgment on Plaintiff's post-sale duty to warn or recall claim.**

In Texas, a "manufacturer's duties concerning product liability are fixed . . . at the time of sale."[42] A manufacturer is not under a continuing duty to improve the manufacturer's product, nor does a manufacturer have a duty to remedy dangerous defects in a product that are not discovered until after manufacture and sale.[43] The Texas Supreme Court acknowledged this proposition in *Grinnell*, where it affirmed a summary judgment in favor of the cigarette manufacturer on the plaintiffs' liability claims premised on alleged failures to take remedial measures to prevent harm after the cigarettes were placed in the stream of commerce.[44] In so holding, the Texas Supreme Court reiterated that product defectiveness is "determined when it leaves the manufacturer's hands and enters the stream of commerce; subsequent acts have no bearing on the issue." *Id.* Thus, whether a manufacturer is liable for an alleged design or marketing defect turns on circumstances at the time the product left the manufacturer's possession.

As a result of the foregoing, there is no "cause of action [in Texas] for a failure to warn about hazards discovered after a product has been manufactured and sold."[45] But some Texas courts have recognized two very narrow exceptions to the general rule that a manufacturer has no post-sale duties: (1) where the manufacturer regains some significant control over the product; and (2) where a manufacturer assumed a post-sale duty and then did not use reasonable means to

---

[41] *Casey*, 770 F.3d at 326.
[42] *Ramirez v. Michelin N. Am., Inc.*, No. SA-07-CA-1032-OG, 2010 WL 11506738, at *2 (W.D. Tex. Feb. 18, 2010).
[43] 59 Tex. Jur. 3d Products Liability 29 (1999).
[44] 951 S.W.2d at 438.
[45] *Syrie v. Knoll Int'l*, 748 F.2d 304, 311 (5th Cir. 1984).

discharge that duty.[46] The latter exception "is clearly negligence-based and unavailable in the context of a strict liability claim."[47] To establish post-sale assumption of a duty under that exception, a plaintiff must show that his injury was a proximate result of the breach of that assumed duty.[48]

In this case, Defendants are entitled to summary judgment on this issue as it is outside of Plaintiff's pleadings. Plaintiff, in his Third Amended Complaint, has not asserted a claim against Daimler, MBUSA, or PAG Distributor for any post-sale duty to warn. As such, summary judgment should be granted on this basis alone.

Regardless, Plaintiff cannot proceed with a post-sale duty claim. Daimler and PAG Distributor's duties concerning product liability were fixed at the time of manufacture and sale of the subject vehicle on September 19, 2008.[49] MBUSA never had any duties to Plaintiff Henry Zoch III as MBUSA had no connection to the subject vehicle as of the date of sale.[50] Plaintiff has presented no evidence that any of the Defendants regained control of the subject vehicle or its seats after the vehicle was initially sold or that any of the Defendants assumed a post-sale duty to warn. Summary judgment should, therefore, be granted on any claim asserted by Plaintiff arising from alleged post-sale duties.

**D.  Defendants are entitled to summary judgment on all of Plaintiff's gross negligence claims for exemplary damages.**

Exemplary damages are authorized under the Texas Civil Practice and Remedies Code only when the claimant proves by clear and convincing evidence that the alleged harm results from

---

[46] *McCune v. Graco Children's Prod., Inc.*, No. 5:09-CV-107, 2011 WL 13217898, at *16 (E.D. Tex. Aug. 8, 2011).
[47] *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 430 (5th Cir. 2001).
[48] *McCune*, 2011 WL 13217898, at *16.
[49] Title History, attached hereto as Exhibit B.
[50] *See* MBUSA's Mot. for Summ. J., Dkt. # 217; MBUSA's Supplement to its Mot. for Summ. J., Dkt. #267.

fraud, malice, or gross negligence.[51] Plaintiff's Third Amended Complaint asserts claims of gross negligence against all Defendants, seeking exemplary damages. To constitute gross negligence, an act or omission must, when viewed objectively from the standpoint of the actor at the time of its occurrence, involve an extreme degree of risk,[52] considering the probability and magnitude of harm to others.[53] Gross negligence also requires that, at the time of the occurrence, the defendant have actual subjective awareness of the risks involved but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others.[54] "This element requires proof that the defendant knew about the danger, but its acts or omissions demonstrate that it did not care."[55]

Applied to the allegations in this case, then, Plaintiff must prove the following to establish gross negligence:

- The design of the driver's seat of the 2008 smart fortwo, when viewed objectively from Defendants' standpoint at the time the vehicle was designed, involved an extreme degree of risk, considering the probability and magnitude of harm to others; and

- At the time the driver's seat of the 2008 smart fortwo was designed, Defendants had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

As to the second bullet point, in a design defect case, Plaintiff must establish that Defendants made a conscious choice to implement a more dangerous design in the 2008 smart fortwo driver's seat instead of a ***known safer design*** to prove gross negligence.[56] A logical extension of the reasoning in *Sanchez* is that, with respect to any failure to warn claim, Plaintiff must present evidence

---

[51] TEX. CIV. PRAC. & REM. CODE § 41.003(a); *Dillard Dep't Stores v. Silva*, 148 S.W.3d 370, 372-73 (Tex. 2004); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 598 (Tex. 1999).
[52] "Extreme risk" is not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to Plaintiff." *Columbia Med. Ctr. Las Colinas v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2012); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).
[53] TEX. CIV. PRAC. & REM. CODE § 41.001(11); *Columbia Med.*, 271 S.W.3d at 248; *Mobil Oil*, 968 S.W.2d at 921.
[54] TEX. CIV. PRAC. & REM. CODE § 41.001(11); *Columbia Med.*, 271 S.W.3d at 248; *Mobil Oil*, 968 S.W.2d at 921.
[55] *Sanchez*, 997 S.W.2d at 596.
[56] *See id.* at 597-98.

Defendants made a conscious choice not to provide a known warning to purchasers of the 2008 smart fortwo to establish conscious indifference.[57] Plaintiff has not provided any evidence that any defendant made such a conscious choice related to the design or warnings of the 2008 smart fortwo, and summary judgment should therefore be entered.

Even if Plaintiff could present evidence of an extreme degree of risk; knowledge of a risk, without more, does not equate to Defendants' conscious indifference to that risk. In *General Motors Corp. v. Sanchez*, the Texas Supreme Court unanimously held there was no evidence to support a finding of conscious indifference.[58] In that case, the decedent was killed when his 1990 Chevrolet pickup allegedly slipped out of gear and pinned him between a gate and the pickup's door pillar.[59] The decedent's family then brought suit against GM and sought to recover exemplary damages.[60] On appeal, GM argued the plaintiffs' evidence of conscious indifference was legally insufficient to support an award of exemplary damages.[61]

The Texas Supreme Court rejected the *Sanchez* plaintiffs' arguments regarding conscious indifference.[62] Importantly, the Court initially noted actual knowledge of a risk in and of itself does not equate to conscious indifference of that risk:

> Much of the evidence . . . including the bases for expert opinions, was relevant to the issue of the degree of risk and GM's knowledge of the danger, but did not show that GM was consciously indifferent.[63]

In other words, evidence that GM had knowledge of the risk did not establish GM was consciously indifferent towards that same risk.

---

[57] *See id.*
[58] *Id.* at 598.
[59] *Id.* at 587.
[60] *Id.*
[61] *Id.* at 595.
[62] *Id.* at 596.
[63] *Id.*

Plaintiff's burden to prove conscious indifference is high, and Plaintiff cannot provide even a scintilla of evidence to meet that high burden. Because Plaintiff has no such evidence, Defendants are entitled to summary judgment on Plaintiff's gross negligence claims.

WHEREFORE PREMISES CONSIDERED, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment and enter an order dismissing the following: Plaintiff's negligent and strict liability marketing defect claims; Plaintiff's negligent and strict liability manufacturing defect claims; Plaintiff's post-sale duties claims; and Plaintiff's gross negligence claims. Defendants further request such other relief, both at law and in equity, to which they may show themselves justly entitled.

Respectfully submitted,

*/s/Tanya B. Scarbrough*
**KURT C. KERN – Lead Counsel**
State Bar No. 11334600
Kurt.kern@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No. 24049268
Tanya.scarbrough@bowmanandbrooke.com
**CRAIG D. DUPEN**
State Bar No. 24065177
Craig.dupen@bowmanandbrooke.com

**BOWMAN AND BROOKE LLP**
5830 Granite Park, Suite 1000
Plano, TX 75024
Telephone (972) 616-1700
Telecopier (972) 616-1701

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this pleading was served on all counsel of record via the Court's E.C.F. system this 10th day of August 2018.

*/s/Tanya B. Scarbrough*